UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.  09 CR 0051 |
| VERSUS | * | |
| JEFFREY JERMAINE PRINCE | * | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING ON MOTION FOR NEW TRIAL**

On September 15, 2009, the jury returned a verdict of guilty in this case, convicting the defendant, Jeffrey Jermaine Prince ("Prince"), of violating 18 U.S.C. § 242, in that he, under color of law, deprived the victim of a right protected by the Constitution and laws of the United States, namely, the right to bodily integrity and to be free from unwanted sexual assault. [Record Doc. 1].[1]

After the presentence investigation was completed, sentencing was scheduled for January 13, 2010.  On the day before sentence was to be imposed, the defendant filed a motion for new trial. [Record Doc. 63].  By this motion, the defendant argued that newly discovered evidence showed that the alleged victim had fabricated the allegations against the defendant.  The defendant further argued that this evidence was not impeachment evidence, but, rather, was substantive evidence that the victim had fabricated the allegations against the defendant. [Record Doc. 63, p. 3].

---

[1] The defendant consented to trial before the undersigned. [Record Doc. 20 and 21].

The court continued the sentencing hearing without date, pending investigation and response by the government to the allegations made in the defendant's motion for new trial. The government has filed its response [Record Doc. 65]; no reply was filed by the defendant.

For those reasons set out below, the motion for new trial filed by the defendant is **denied**.

A. **The positions of the parties**

At trial, the alleged victim, MT, testified that she had known the defendant since he was a teenager; the defendant was a friend of one of her brothers. Prince was a jailer at the Patterson city jail. MT's brother was an inmate at the jail. MT testified that Prince had called her cell phone, soliciting her for sex. MT testified that she had refused. On May 18, 2008, MT went to the Patterson city jail to bring food to her brother. She was met by the defendant who told her to return to her car, which she did. Thereafter, Prince approached the car, told MT that he "wanted" her, reached into her car and touched her left breast. MT testified that she told Prince to stop. Prince then proceeded to touch her leg, and ran his hand up her leg touching her genitals.

MT testified that she grabbed Prince's arm in an effort to stop him. Prince told her that unless she let go of his arm he would file assault and battery on an officer charges against her. MT testified that Prince let her go after she agreed to call him later. Instead, she called the Patterson Police Department, complained about Prince's actions, and later

that day made a written statement to the police.

Sometime thereafter, MT called the FBI and reported the incident. FBI Special Agent Donald Bostic was assigned the case. Bostic contacted Prince who met with Bostic and gave Bostic a written statement. In that statement, Prince acknowledged talking to MT about sex, but said he was only joking around. Prince acknowledged going to MT's car, and indicated that he might accidentally have brushed her breasts. Prince testified that he reached to touch her leg, but that MT had grabbed his wrist. Prince testified that he told MT not to grab him because he was the police. Again, Prince testified that he was only joking when he said this.

While surveillance cameras were trained on the parking lot, the tapes only show Prince at the car with MT; the tapes do not show what happened between the defendant and MT.

Counsel for the defendant attached a copy of a portion of a sworn statement from Patrick Augman ("Augman"), to the motion for new trial. The statement is dated January 5, 2010. Counsel for the defendant asserts that he did not learn of the existence of Augman until he received a letter dated October 26, 2009 from the lawyer representing Prince in civil litigation filed by MT. Counsel for the defendant asserts that MT told Augman that she, MT, had concocted the accusation against Prince as revenge against the Patterson Police Department for not pursuing molestation charges involving one of her children.

Counsel for the defendant argues that he did not know, and had no way of knowing, of the existence of Augman prior to trial. Counsel argues that Augman's testimony is neither cumulative nor impeaching. Counsel for the defendant argues that the impeachment of a witness is defined as "adducing proof that a witness who has testified in a cause is unworthy of belief", citing *Black's Law Dictionary*, 4th Ed. Counsel goes on to argue that Augman's testimony is not impeachment, but is rather substantive evidence that MT fabricated the allegations against Prince.

The government has opposed the defendant's motion for new trial. [Record Doc. 65]. Attached to the Government's opposition is the complete statement taken from Augman dated January 5, 2010, a copy of an FBI 302 of Augman dated February 3, 2010, a copy of an FBI 302 of MT dated January 19, 2010 and Augman's rap sheet. The government argues that Augman's testimony is merely impeachment and would not be likely to produce an acquittal. Furthermore, the government argues that Augman's testimony is unbelievable because MT's allegation against Prince occurred *before* the issue of the alleged molestation of one of her children.

Finally, the government argues that Augman's statement actually conflicts with a statement given by the defendant to SA Bostic, in which the defendant acknowledged "possibly" touching the victim's breast and "joking" about her having sex with him.

**B. Law and analysis**

Motions for new trial are generally disfavored and reviewed with great caution. *United States v. Shugart*, 117 F.3d 838,847 (5th Cir. 1997); *United States v. Gonzalez*, 163 F.3d 255, 264 (5th Cir. 1998).

The parties apparently agree on the burden of proof. In order to receive a new trial on the basis of newly discovered evidence, the defendant must show that: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal." *United States v. Franklin*, 561 F.3d 398, 405 (5th Cir. 2009) (*quoting United States v. Bowler*, 252 F.3d 741, 747 (5th Cir. 2001) (*in turn quoting United States v. Lowder*, 148 F. 3d 548, 551 (5th Cir. 1998)).

While, generally speaking, mere impeachment evidence is insufficient to grant a new trial, some courts have recognized that newly-discovered impeachment evidence may be so powerful that the testimony, if believed, could render the impeached witness' testimony totally incredible. If the impeached witness' testimony provided the only evidence on an essential element, and if the testimony were uncorroborated, then a new trial may be granted. *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992); *see also United States v. Harris*, 462 F.2d 1033, 1035 (10th Cir. 1972) (as a general rule, a new

trial is not required where newly discovered evidence is cumulative or impeaching unless its potential impact upon the result of the trial is apparent); *United States v. Davila*, 428 F.2d 465, 466 (9th Cir. 1970) (same).[2]

In this case, the Court need not decide whether the testimony of Augman is properly considered impeachment or not. The court's careful review of Augman's sworn statement, attached in full by the government to its opposition, compels the court to conclude that Augman's testimony at a new trial would not likely produce an acquittal.

Augman's sworn statement can, charitably at best, be characterized as rambling. His responses to the questions of counsel for the defendant were not direct, and were often non-responsive. On the critical issues in this case, Augman's statement is far from absolutely clear. With regard to MT's motive for lying, Augman said as follows:

> AUGMAN: . . . and I do believe [T] really act (sic) out of anger and spite, just to get back at the Police Department.
>
> COUNSEL: Okay. And I know that's your belief, and I think it's well founded. Do you know, has she ever admitted that to you?
>
> AUGMAN: I'm gonna' be honest; I'm very smart, educated; I can pick it up; she didn't come out and say it; but I know – I can – I ain't crazy; I sat there; and I can pick it up; she is not going to come out and say directly; I'll bring it out; okay?

Record Document 65, Ex. A, p. 12.

---

[2] Some courts seem to address this issue as one of "materiality", that is, cumulative or impeaching evidence is not "material" while critical impeaching evidence which goes directly to the government's proof of an essential element may be "material", even if it is impeachment.

On the issue of whether or not MT was ever touched by the defendant, Augman's sworn statement, in pertinent part, reads as follows:

COUNSEL: That's okay. Now, earlier you and I had talked; and you had mentioned a conversation that you had with [T] when you basically directly asked her whether or not she had been touched inappropriately by Jeff Prince. Could you relay that back to us?

AUGMAN: Well, I asked –I can recall [T] – I say: "[T], be honest. Did Jeffrey touch you; or did Jeffrey not touch you?"; and, uh, [T], in fact, admit to me, at least on one occasion, he didn't touch her in that area; she, in fact, say (sic) that Jeffrey called her; it was her friend.

\*         \*         \*

COUNSEL: Okay. But at least on one occasion she admitted to you that –

AUGMAN: Yes.

COUNSEL:  – Jeff Prince did not touch her?

AUGMAN: Yes.

COUNSEL: Okay. Or did not attempt to touch her?

AUGMAN: No.

COUNSEL: Okay. "No", that –

AUGMAN: No; that he did not touch her.

COUNSEL: Okay. And that he didn't attempt to touch her?

-7-

>AUGMAN: And he didn't attempt to touch her; . . . .
>
>COUNSEL: Okay. And it just one more time, to reiterate. You are telling me that, at least on one occasion, she admitted that Jeff Prince did not touch her, or attempt to touch her?
>
>AUGMAN: Yes; she did not admit it – I mean, I'm sorry. Yes.

Record Document 65, Ex. A, pages 13-15.

When interviewed by SA Bostic, Augman said that there were other people who could corroborate his story that MT was lying about the defendant, Prince, but Augman refused to provide those names to Bostic. Bostic offered Augman a polygraph test, which he refused.

As the government points out in its opposition to the motion, Augman's story contradicts not only MT, but also the defendant. In his statement to Bostic, Prince acknowledged that he may have accidentally brushed MT's breast; he admitted trying to touch her leg. According to Augman, MT told Augman that Prince never even attempted to touch her leg. That statement by Augman contradicts Prince's statement to SA Bostic.

Considering Augman's less than clear and direct answers in the sworn statement, the fact that Augman's statement contradicts, in part, the statement of the defendant and finally given that Augman is a convicted felon, and is therefore subject to impeachment himself, the undersigned cannot find that the admission of Augman's testimony at a new

trial "would probably produce an acquittal." *Franklin*, 561 F.3d at 405.[3]

The cross-examination of MT by counsel for the defendant was exhaustive, detailed and effective. The court simply cannot find under the facts of this case that Augman's testimony would have probably led to an acquittal. Accordingly, the motion for new trial is denied.

July 2, 2010, Lafayette, Louisiana.

*C Michael Hill*
_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

[3]The government also argues that Augman's statement is demonstrably false because the "motive" for MT's false complaint against Prince, the failure of the Patterson Police Department to prosecute a molestation case in which one of her children was the victim, actually occurred *after* the complaint made against the defendant, Prince. In support of that allegation, the government relies on the statement given to SA Bostic by MT after the motion for new trial was filed. The government has offered no corroboration of MT's statement. Accordingly, the court has not considered this argument